NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

DARREN LEE SHOCKEY,
*Appellant*.

No. 1 CA-CR 16-0704
FILED 10-26-2017

Appeal from the Superior Court in Mohave County
No.  S8015CR201500617
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

―――――――――――――

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

―――――――――――――

**J O H N S E N**, Judge:

**¶1**　　　　Darren Lee Shockey appeals his convictions and sentences for resisting arrest, aggravated assault, misconduct involving weapons and possession of marijuana.  Shockey argues on appeal that the superior court erred in denying his request for new counsel and in failing to hold a hearing on the issue.  For the following reasons, we affirm Shockey's convictions and sentences.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Shockey was arrested after a traffic stop and charged with resisting arrest, a Class 6 felony; aggravated assault, a Class 4 felony; misconduct involving weapons, a Class 1 misdemeanor; and possession of marijuana, a Class 6 felony.

**¶3**　　　　The court appointed the public defender's office to represent Shockey.  Before trial, Shockey submitted several handwritten "notices" to the court, and at trial, he refused to sit with his appointed lawyer in the courtroom.  The jury found him guilty on the felony charges, and the court convicted him of the misdemeanor.  The court imposed concurrent terms of incarceration, the longest of which was one year.

**¶4**　　　　We have jurisdiction over Shockey's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017), 13-4031, and -4033(A).[1]

### DISCUSSION

**¶5**　　　　Shockey argues the superior court violated his Sixth Amendment right to counsel by failing to conduct a hearing pursuant to

―――――――――――――

[1]　　　Absent material revision since the date of the offense, we cite to the current version of statutes.

*State v. Torres*, 208 Ariz. 340 (2004), and appoint new counsel because he had an "irreconcilable conflict" with his court-appointed attorney. We review a superior court's decision on a motion to substitute counsel for an abuse of discretion. *State v. Moody*, 192 Ariz. 505, 507, ¶ 11 (1998).[2]

**¶6**      "The Sixth Amendment guarantees criminal defendants the right to representation by counsel." *Torres*, 208 Ariz. at 342, ¶ 6. Indigent defendants charged with felonies are entitled to have competent counsel appointed to represent them. *Id.* However, the Sixth Amendment does not entitle a defendant to his "counsel of choice, or to a meaningful relationship with his or her attorney." *Id.* (citation omitted). When a defendant asks the court to appoint him a new lawyer, the "judge has the duty to inquire as to the basis" for the request. *Id.* at 343, ¶ 7 (citation omitted). "The nature of the inquiry will depend upon the nature of the defendant's request. . . . [G]eneralized complaints about differences in strategy may not require a formal hearing or an evidentiary proceeding." *Id.* at ¶ 8. The court is required to conduct a formal hearing only if the defendant "makes sufficiently specific, factually based allegations in support of his request for new counsel." *Id.* (quotation and citation omitted).

**¶7**      Shockey argues he repeatedly asked the court to appoint new counsel and "request[ed] a hearing" on the issue, but the court "denied the request without holding a hearing to allowing him to state his grounds." Our review of the record, however, does not reveal that Shockey ever asked for a hearing regarding the issue of new counsel. Nor did Shockey ever assert "specific, factually based allegations" showing that he had an irreconcilable conflict with his counsel. *See Torres*, 208 Ariz. at 343, ¶ 8 (quotation and citation omitted).

**¶8**      Soon after he was indicted, Shockey submitted a handwritten letter to the court asking it to "quash this case," but making no request regarding representation. Then, at the first omnibus hearing on September 21, 2016, Shockey's court-appointed counsel told the court his client wished to represent himself. The court asked Shockey, "[I]s that correct, that it is your preference to represent yourself in each of these matters?" Shockey responded by handing the court another handwritten letter containing no request regarding his representation, but requesting that the charges

---

[2]      On appeal, Shockey offers some criticism of his appointed counsel's actions at trial. Any contention that his trial lawyer was ineffective, however, may not be raised on appeal but rather must be raised under Arizona Rule of Criminal Procedure 32.1. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002).

against him be dismissed. The court again asked Shockey whether he desired to represent himself, to which Shockey replied, "I just don't understand. I object to everything."

¶9　　At a status conference on October 23, 2016, the court noted the previous discussion regarding Shockey's purported desire to represent himself and stated that it considered Shockey to be represented by counsel. Before that status conference, Shockey had filed with the court a "Bill of Particulars," which did not address the issue of his representation. On October 26, 2015, Shockey's counsel filed a "Motion to Withdraw and Have New Counsel Appointed." The motion stated that Shockey had expressed an interest in representing himself and that there was "little to no communication between counsel and client." The motion further expressed counsel's concern that "no amount of information" counsel could give Shockey could obviate Shockey's concerns and desire to represent himself, and stated that Shockey had been advised to put his request to represent himself in writing, but he had not done so. The court denied counsel's motion at a December 2, 2015 status conference. During the status conference, counsel reiterated Shockey's expressed desire to represent himself and recommended that the court appoint new counsel. Upon denying the motion, the court stated:

> The reason I'm denying the motion is it sounds like [] the issue that [counsel] is having with Mr. Shockey is that Mr. Shockey simply does not want to cooperate with [counsel] in his representation.

> I have admonished Mr. Shockey in the past that he needs to take advantage of his attorney's services and he needs to cooperate with his attorney in his representation. If he fails to do so, he's certainly going to do so at his own peril.

> I am certain that any attorney I appoint to represent Mr. Shockey may very well have the same issues with Mr. Shockey[.]

¶10　　After denying counsel's motion to withdraw, the court further advised Shockey that if he wished to represent himself, he would have to put the request in writing and the court would hold a hearing. The court asked Shockey if he intended to make such a request, to which Shockey responded, "[I]t's all on the notice, for the record, that I filed today." In Shockey's handwritten "notice," he requested a continuance "so that [he] may seek law counsel assistance" and stated, "[I] object to court appointed

public defender. [I] am sui juris." Shockey filed a similar notice on January 7, 2016, which stated, in part, "[I] am self present (sui juris) [sic]of my own right to settle the matter and offer restoration." At the status conference on that date, the prosecutor addressed Shockey's notice and asked the court whether it should "clarify" whether Shockey was making a request to represent himself. The court replied:

> Well, I did read that, and I did not interpret that as the defendant's request to represent himself. I took that as his objection to having [counsel] represent him because I believe we've had some hearings in the past where the defendant wanted new counsel and I denied those requests.
>
> I have also mentioned to the defendant, probably on more than one occasion that if, in fact, he does want to represent himself he needs to file a request with the Court; making it very clear that he is requesting to represent himself.
>
> If so, then we'll have a hearing, at which time I'll be required to make a determination whether or not the defendant is basically mentally competent to waive his right to have an attorney represent him.

¶11 Shockey subsequently filed two other "notices" with the court that contained only the following general statements regarding representation: "[I] do not consent to court appointed public defender. . . . [I] seek law counsel assistance," and "[I] seek counsel assistance in law. [I] as a man object to, and [I] do not accept appointed public defender from the B.A.R. and [I] a man do not accept being a defendant." Then, on the first day of trial, after refusing to sit with his counsel, Shockey stated in court, "I wish to have proper law counsel assistance." The court responded: "Mr. Shockey, you do have proper law counsel for your assistance. The fact that you have chosen not to cooperate with [your counsel] is a decision that you have made."

¶12 Throughout the proceedings, Shockey made only vague statements regarding his legal representation. He did not articulate any "specific, factually based allegations" regarding his appointed attorney, cited no "differences in strategy," and did not allege any "breakdown in communication, or an irreconcilable conflict" between himself and his counsel. *See Torres*, 208 Ariz. at 343, ¶ 8 (quotation and citation omitted). Therefore, even if we construe Shockey's statement that he wished to "seek counsel assistance in law" as a request for a change of counsel, the request

was insufficient to require a hearing under *Torres*. *See id.* Further, given the general nature of Shockey's requests, the superior court made a sufficient inquiry when it repeatedly asked him whether he wanted to represent himself and when it addressed his counsel's motion to withdraw. Based on that inquiry, the court could properly conclude that the problem was Shockey's own refusal to cooperate or communicate with counsel. *See State v. LaGrand*, 152 Ariz. 483, 486 (1987) (among factors relevant to motion for change of counsel are "whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict").

**¶13** Moreover, the court admonished Shockey several times that he should participate in his representation and communicate with his attorney and that failure to do so would be "at his own peril," and Shockey never raised any reason preventing him from doing so. The court also gave Shockey multiple opportunities to submit a written request regarding his expressed desire to represent himself, if that were what he really wanted, and stated several times that it would be willing to hold a hearing on the subject of Shockey's representation if he made his request explicit and submitted it to the court in writing. *See* Ariz. R. Crim. P. 6.1(c) ("A defendant may waive his or her rights to counsel . . . in writing, after the court has ascertained that he or she knowingly, intelligently and voluntarily desires to forego them.") Accordingly, the superior court did not abuse its discretion in responding to Shockey's requests regarding his legal representation.

## CONCLUSION

**¶14** For the foregoing reasons, we affirm Shockey's convictions and sentences.

